UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

COLONY INSURANCE COMPANY,
Plaintiff,

v.

SHANE GARST, et al.,
Defendants.

Case No.: 25-cv-02235-AJB-JLB

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING COLONY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

(Doc. Nos. 40; 41)

This case involves an insurance coverage dispute between Plaintiff Colony Insurance Company ("Colony") and Defendants Shane Garst and the Sydekicks Real Estate, LLC (collectively, "Garst"). Specifically, Colony insures third-party Rivera Construction, Inc. ("Rivera") and Garst hired Rivera to perform work. Colony asserts that it has no duty to defend Garst in a state court proceeding related to Rivera's work because Garst does not qualify as an additional insured party under Rivera's insurance policy.

The record before the Court shows that Garst does not qualify as an additional insured party, and so Colony is not obligated to defend Garst in the state court proceeding. The Court accordingly **GRANTS** summary judgment in Colony's favor and **DENIES** summary judgment in Garst's favor for the following reasons.

# I. BACKGROUND

## A. Factual Background

In January 2021, Garst purchased a property in Carlsbad, California. (Doc. No. 39 ¶ 4.) Garst subsequently hired Rivera "to perform remodeling and improvement tasks" at the property. (*Id.* ¶ 5.)

While performing the tasks, Rivera maintained a Commercial General Liability insurance policy (the "Policy") with Colony. (*Id.* ¶ 1; *see* Doc. No. 39-3.) The Policy includes four "additional insured" endorsements, only one of which is relevant here: the scheduled person or organization endorsement (the "Endorsement"). (Doc. No. 39-3 at 35–36; *see also id.* at 37–38, 85.)[1]

The Endorsement amends the "Who Is An Insured" portion of the Policy

> to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(*Id.* at 35.) The Schedule identifies additional insured persons and organizations as those that are "required by written contract with the Named Insured [Rivera] that is executed by the parties to the contract prior to the commencement of work that is called for in the contract." (*Id.*)

Garst hired Rivera in May 2021. (Doc. No. 39 ¶ 5.)

Rivera commenced work on July 26, 2021, and proceeded to invoice Garst for work performed between July 26 and July 31, 2021, on August 1, 2021. (Doc. No. 39-4 at 17–18.)

---

[1] Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

On July 28, 2021, Rivera contacted its insurance broker Jim Gellein ("Gellein") to request a certificate of liability insurance. (*Id.* at 10.) At oral argument, the parties agreed that Gellein does not work for and is independent of Colony. In its request, Rivera asked for Garst to be named as an additional insured party. (*Id.*) On the same day, Gellein issued Garst a certificate of liability insurance that included as a part of its "Description of Operations/Locations/Vehicles" that "Shane Garst and The Sydekicks Real Estate, LLC are named as additional insured per written contract." (*Id.* at 12.)

Rivera completed work on July 8, 2022, and sent Garst a final invoice for work performed between June 25 and July 8, 2022, on July 13, 2022. (*Id.* at 582–83.)

While Rivera was completing its tasks, on February 11, 2022, Garst entered a purchase agreement with Winthrop Cramer ("Cramer") for Garst to sell the property to Cramer. (Doc. No. 39 ¶ 7.) On August 27, 2022, Cramer notified Garst of construction deficiencies. (*Id.* ¶ 10.)

Cramer initiated the underlying state court proceeding ("Underlying Action") in January 2023. (*Id.* ¶ 16.) In October 2024, Colony denied Garst any coverage in the Underlying Action. (*Id.* ¶ 17.) In July 2025, Garst asked Colony to reconsider its denial. (*See id.* ¶ 18.) On September 4, 2025, Colony reaffirmed its denial. (Doc. No. 39-19.)

**B. Procedural Background**

On August 27, 2025, Colony initiated the present action against Garst. (Doc. No. 1.) Colony raises two causes of action: (1) Colony seeks a judicial declaration under 28 U.S.C. §§ 2201, *et seq.*, that it has no duty to defend Garst in the Underlying Action (*id.* ¶¶ 31–35); and (2) Colony seeks a judicial declaration under 28 U.S.C. §§ 2201, *et seq.*, that it has no duty to indemnify Garst in the Underlying Action (*id.* ¶¶ 36–40).

On September 30, 2025, Garst answered Colony's complaint and filed counterclaims. (Doc. No. 6.) Specifically, Garst (1) contends that Colony has breached its contract contained in the Policy, which requires Colony to defend and indemnify Garst in the Underlying Action (*id.* at 10 ¶¶ 17–22); and (2) seeks a declaration that Garst qualifies

as an additional insured under the Policy to whom Colony owes a duty to defend and indemnify in the Underlying Action (*id.* at 10–11 ¶¶ 23–25).[2]

Garst now seeks partial summary judgment against Colony on three questions: (1) whether a written contract exists between Garst and Rivera under California law; (2) whether Garst qualifies as an additional insured under the Policy; and (3) whether Colony owes a duty to defend Garst in the Underlying Action. (Doc. No. 40 at 2.)

Colony cross-moves for summary judgment against Garst on both of its causes of action. (Doc. No. 41.)

## II. LEGAL STANDARD

Granting summary judgment under Federal Rule of Civil Procedure 56 is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

The resolution of these cross-motions turns on whether Garst qualifies as an additional insured party under the Policy, as defined by the Endorsement. Thus, the crux of the dispute is whether there is a written contract between Rivera and Garst that (1) was

---

[2] Garst also filed a third-party complaint against Gellein and IMA Inc. alleging counts of (1) professional negligence and (2) negligent misrepresentation. (Doc. No. 6-1.) Garst voluntarily dismissed its claims against Gellein and IMA Inc. without prejudice. (Doc. No. 25; *see also* Doc. No. 26.)

executed (2) before Rivera commenced work, (3) defined the scope of the work to be performed, and (4) required Rivera to add Garst as an additional insured.

The evidence before the Court indicates that no contract that meets all four of these requirements exists. Colony has accordingly established that Garst does not qualify as an additional insured party. Conversely, Garst has failed to provide sufficient evidence to show that he qualifies for coverage as an additional insured party.[3]

**A. The Endorsement establishes four relevant requirements for who can qualify as an additional insured.**

Under California law, contract interpretation is a question of law. *See TRB Inv., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *TRB*, 40 Cal. 4th at 27 (citing Cal. Civ. Code § 1639). The "'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,'" controls judicial interpretation, unless they are used by the parties in a technical sense or given special meaning by usage. *Id.* (quoting Cal. Civ. Code §§ 1638, 1644). The "language in a contract must be interpreted as a whole, and in the circumstances of the case," *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other," *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 827 (1990) (quoting Cal. Civ. Code § 1641).

The parties agree that the Policy's Endorsement is a crucial contract in this matter. (*See* Doc. Nos. 40-1 at 14–16; 41 at 17–19.) As previously stated, the Endorsement amends the "Who Is An Insured" portion of the Policy

---

[3] Because the Court concludes that Garst does not qualify as an additional insured, the Court does not reach Colony's alternative argument that Garst is precluded from coverage because any damages occurred after Rivera completed its work. (Doc. Nos. 41 at 20–21; 42 at 20–22; 45 at 7–10.) The Court also does not reach the parties' objections related to this alternative argument. (*See* Doc. Nos. 43-7; 45-1.)

> to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Doc. No. 39-3 at 35.) The Schedule identifies additional insured persons and organizations as those that are "required by written contract with the Named Insured [Rivera] that is executed by the parties to the contract prior to the commencement of work that is called for in the contract." (*Id.*)

The Endorsement's plain text establishes four relevant requirements for Garst to qualify as an additional insured person or organization. First, there must be a written contract that is "executed by the parties." (*Id.*) Second, that contract must be executed "prior to the commencement of work." (*Id.*) Third, the contract must define the scope of the work to be performed, as it must be executed "prior to the commencement of *work that is called for in the contract*." (*Id.* (emphasis added).) Fourth, the coverage of Garst as an additional insured must be "[a]s required by written contract with the Named Insured," Rivera. (*Id.*)

A lack of a contract that meets all four of these requirements would thus preclude Garst from qualifying as an additional insured. (*Id.*)

**B. Garst does not qualify as an additional insured.**

The parties disagree on whether Garst qualifies as an additional insured under the Endorsement. (*Compare* Doc. No. 41 at 17–20, *with* Doc. No. 40-1 at 16–22.) On one hand, Colony contends that there is no written contract between Garst and Rivera. (Doc. No. 41 at 18.) On the other, Garst asserts that a 604-page compilation (the "Compilation") of emails, invoices, and receipts dated between May 28, 2021, and June 6, 2025, constitutes a written contract between Garst and Rivera under California law. (Doc. No. 40-1 at 20–21; *see also* Doc. No. 39-4.)

Assuming that Garst's Compilation or some portion of it constitutes a written contract, the Compilation does not satisfy at least two of the relevant conditions required to make Garst an additional insured under the Endorsement. First, nothing in the Compilation requires that Rivera add Garst as an additional insured under the policy. Second, Rivera and Garst did not execute the Compilation before Rivera commenced work.[4]

**1. The Compilation does not require that Garst be covered as an additional insured under the Policy.**

Courts routinely interpret the phrase "[a]s required by written contract" (Doc. No. 39-3 at 35) "to mean that a third party only qualifies as an additional insured . . . if a written contract between [the named insured] and that third party compelled [the named insured] to name the third party as an additional insured." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, No. 2:12-cv-00900-RGK-SP, 2019 WL 2519453, at *4–5 (C.D. Cal. Apr. 11, 2019) (citing cases).

The written contract's language must explicitly obligate the named insured to identify a third party as an additional insured. For example, in *Public Service Mutual Insurance Co. v. Liberty Surplus Insurance Corp.*, the court found that a contractual term stating "Owner to be named as Additional Insured to be evidenced by Formal Endorsement and Property Description and Project Name to be set forth thereon" satisfied the "as required by written contract" requirement. 205 F. Supp. 3d 1161, 1165, 1167 (E.D. Cal. 2016) (citing Pl.'s Separate Statement of Undisputed Facts in Opp'n to Def.'s Mot. at 3 ¶ 4, *Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, No. 2:14-cv-00226-MCE-KJN, 205 F. Supp. 3d 1161 (E.D. Cal. Dec. 3, 2015) (Doc. No. 29-11)). Another court similarly found that a contract that states that the insured party "is to name" the third party "as

[4] Because the Compilation does not satisfy these requirements, the Court does not reach the remaining requirements that the contract at issue must be "executed by the parties" and define the scope of "work that is called for in the contract." (Doc. No. 39-3 at 35.)

additional insureds on all [insurance] policies, except for worker's compensation," meets the requirement. *Ramparts, Inc. v. Fireman's Fund Ins. Co.*, No. 2:09-cv-00371-RLH-LRL, 2010 WL 2326072, at *3 (D. Nev. June 7, 2010). A third court found the requirement to be satisfied by contractual language that "[e]ndorsements must be furnished reflecting the inclusion of the interest of *Epic Construction Inc.*, their officers, directors, partners, representatives, agents, and employees, and naming each as Additional Insured on a primary and noncontributing basis including Products and Completed Operations." *United Specialty Ins. Co. v. Colony Ins. Co.*, No. 2:23-cv-07275-MCS-PD, 2024 WL 4004051, at *7 (C.D. Cal. July 1, 2024) (citing Pl.'s Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of its Mot. for Summ. Adjudication at 10–12 ¶ 25, *United Specialty Ins. Co. v. Colony Ins. Co.*, No. 2:23-cv-0725-MCS-PD (C.D. Cal. Apr. 5, 2024) (Doc. No. 39-1)).

The Court has carefully reviewed all 604 pages that comprise the Compilation and did not find any language that explicitly obligated Rivera to identify Garst as an additional insured under the Policy. (*See generally* Doc. No. 39-4.)

Garst's arguments confirm that the Compilation lacks any such explicit language.

First, Garst does not identify any specific language in the Compilation that can be said to have compelled Rivera to add Garst as an additional insured to the Policy. Instead, Garst points out that "Rivera invoiced Garst and Garst paid . . . invoices that included a 4% liability insurance line item for work from August 2021 through at least July 8, 2022." (Doc. No. 40-1 at 17–18.)

The Court assumes that Garst is referring to Rivera's inclusion of the text "4% Liability Insurance" in its invoices.[5] (*See* Doc. No. 39-4 at 17, 19, 25, 32, 55, 86, 107, 114, 132, 146, 148, 159, 179, 251, 292, 293, 345, 374, 394, 405, 425, 445, 484, 494, 511, 529,

---

[5] Instead of providing a pincite to any specific example, Garst cites "Stipulated Fact #4" to support his statement. (Doc. No. 40-1 at 17–18.) This citation leads the Court to a stipulation that "On January 11, 2021, Shane Garst purchased property located at 3357 Adams Street in Carlsbad, California (the 'Property')." (Doc. No. 39 at 4 ¶ 4.)

544, 555, 580, 582.) However, the phrase "4% Liability Insurance" cannot be said to explicitly require Rivera to identify Garst as an additional insured. *Cf. Pub. Serv. Mut. Ins.*, 205 F. Supp. 3d at 1167; *Ramparts*, 2010 WL 2326072, at *3; *United Specialty Ins.*, 2024 WL 4004051, at *7. This may simply be a passthrough of Rivera's insurance costs.

Second, Garst notes that Rivera emailed Gellein on July 28, 2021, to request a certificate of liability insurance and asked that Garst be "named as additional insured." (Doc. No. 40-1 at 18 (quoting Doc. No. 39-4 at 10).) Garst adds that Gellein subsequently issued a certificate of insurance that stated "Shane Garst and The Sydekicks Real Estate, LLC are named as additional insureds per written contract." (Doc. No. 40-1 at 18 (quoting Doc. No. 39-4 at 12).)

Rivera's communication with Gellein and the resulting certificate of insurance are red herrings. Like the "4% Liability Insurance" phrase, it cannot be said that Rivera's email explicitly required Rivera to identify Garst as an additional insured. *Cf. Pub. Serv. Mut. Ins.*, 205 F. Supp. 3d at 1167; *Ramparts*, 2010 WL 2326072, at *3; *United Specialty Ins.*, 2024 WL 4004051, at *7. Rather, the communication merely shows that Rivera requested Gellein to identify Garst as an additional insured. (*See* Doc. No. 39-4 at 9–10.) It does not offer any reason for the request, much less establish that the request was compelled by a written contract. (*See id.*) Nor does the fact that the resulting certificate of insurance states "Shane Garst and The Sydekicks Real Estate, LLC are named as additional insured per written contract" provide any clarification, as there is no evidence that Gellein sought additional information, much less received a written contract. (*See id.* at 12.) Moreover, if such a contract exists and was provided to Gellein, common sense dictates that Garst would have provided that contract to support its motion for partial summary judgment instead of pointing the Court to the 604-page Compilation.[6] It should also go without saying that the

---

[6] At the motion hearing, Garst made much of Rivera's and Gellein's customs and practices in identifying third parties as additional insureds. However, such evidence does not establish the existence of any contractual text that obligated Rivera to identify Garst as an additional insured. Although such

Compilation could not serve as a written contract that was provided to Gellein since the majority of the documents contained in the Compilation were created after July 28, 2021. (*See generally* Doc. No. 39-4.)

Under these circumstances, the Court finds that there is no written contract that explicitly obligated Rivera to identify Garst as an additional insured as the Endorsement requires. (*See* Doc. No. 39-3 at 35.)

**2. Rivera and Garst executed the Compilation after Rivera commenced work.**

Additionally, still assuming that the Compilation qualifies as a contract between Rivera and Garst, Rivera and Garst did not execute the Compilation before Rivera commenced work.

The evidence before the Court indicates that Rivera commenced work on July 26, 2021. (Doc. No. 39-4 at 17 (August 1, 2021 invoice for work performed "7/26/21-7/31/21").)

However, the evidence is unclear as to when it can be said that Rivera and Garst "executed" the Compilation. This is because the Compilation includes documents from as early as May 28, 2021 (*id.* at 23), to as late as June 6, 2025 (*id.* at 14–15). The only document in the Compilation that pre-dates Rivera's July 26, 2021 commencement of work is a May 28, 2021 receipt for "SUP DSL #2." (*Id.* at 23.)

The Court accordingly asked Garst at the motion hearing when Rivera commenced work and when Garst believes that the Compilation was "executed." Garst responded that Rivera commenced work by July 26, 2021, at the latest. Garst's counsel also replied that the Compilation was executed on July 28, 2021.

Under these circumstances, Garst necessarily concedes that Rivera and Garst executed the Compilation *after* Rivera commenced work. In turn, even if the Compilation

---

evidence might be relevant to claims against Rivera or Gellein, Garst does not bring any claims against Rivera or Gellein here. (Doc. Nos. 25–26.)

qualifies as a written contract, it is not one "that [was] executed by the parties to the contract *prior to the commencement of work*." (Doc. No. 39-3 at 35 (emphasis added).)

This further precludes Garst from qualifying as an additional insured under the Endorsement's terms. (*See id.*)

## IV. CONCLUSION

For the foregoing reasons, the Court **FINDS** that there is no written contract that (1) obligated Rivera to identify Garst as an additional insured and (2) was executed by Rivera and Garst before Rivera commenced work. The Court consequently **FINDS** that Garst does not qualify as an additional insured under the Policy. Because Garst does not qualify as an additional insured, the Court **DECLARES** that Colony does not have a duty to defend or to indemnify Garst in the Underlying Action.

The Court accordingly **DENIES** Garst's Motion for Partial Summary Judgment (Doc. No. 40) and **GRANTS** Colony's Motion for Summary Judgment (Doc. No. 41).

**IT IS SO ORDERED**.

Dated: October 15, 2026

Hon. Anthony J. Battaglia
United States District Judge